The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye! Hear ye! Hear ye! All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning. I see Mr. Murray and I see Mr. Hamilton. Our first case this morning is Allen v. Brown Advisory. Can you both hear me? Yes, Your Honor. All right. Then you may proceed. Mr. Murray. Thank you. May it please the Court. First I'd like to just briefly note I'm wearing some unusual glasses this morning. These are medically prescribed. They may be a little bit out of the ordinary for this setting, so I just wanted to note that for the Court. I think they're very fashionable. Thank you, Your Honor. In the first instance, this is an appeal from the District Court's granting of defendant Brown Advisories and Brown Investment Advisories' motion to dismiss two claims alleged by plaintiff Joseph Allen. This Court reviews that decision de novo. In that decision, the District Court dismissed two claims, Dr. Allen's claim for breach of contract and his claim for breach of fiduciary duty. Beginning with the breach of fiduciary duty claim, this should be a relatively easy decision for this Court. There, the District Court found that under Maryland law, Dr. Allen was unable to state a claim, an independent claim for breach of fiduciary duty. While the motion to dismiss was pending, however, the Maryland Court of Appeals, which is the highest court in Maryland, definitively concluded that under Maryland law, plaintiffs may allege independent claims for breach of fiduciary duty. That answered the question. Unfortunately, the District Court did not take notice of that decision, although it had been submitted by the defendants. The District Court simply made an error in finding that there is no cognizable claim under Maryland law for breach of fiduciary duty. I think we have to start with how do we get around the abuse of discretion standard? I mean, I'm sure you agree that after the deadline for filing an amended complaint, the staff, it's within the District Court's discretion to control its docket and deny a late filed motion. I mean, shouldn't we start there? Well, in your honor, I should clarify. There are two decisions by the District Court that are under review here. And yes, the abuse of discretion standard applies to the second decision, which was the District Court's denial of leave to file the second amended complaint. The first decision was the court's decision to dismiss the grant, to grant the motion to dismiss the claims alleged in the first amended complaint. And that decision, your honor, is subject to de novo review by this court. There, first the District Court found as a matter of law that there was no claim, a freestanding independent claim for breach of fiduciary duty, which is a question of law, that this court reviews de novo. And there, it was simply an error. The other element of the District Court's decision granting the motion to dismiss was Dr. Allen had failed to allege a breach of contract claim. There, the District Court essentially found, well, the District Court's primary error with respect to that decision was failing to construe the alleged facts in the complaint in favor of the non-movement. There, the District Court construed the complaint as though Dr. Allen essentially pled himself out of court by alleging that the Brown defendants were acting, according to the District Court, at the direction of the other defendant, Elizabeth Key. Ms. Key had a durable power of attorney. The District Court assumed, or presumed, that everything that was the subject of the breach of contract claim against the Brown defendants had been directed by Ms. Key. That we respectfully submit as an error because it construed the allegations in the complaint not in favor of the non-movement. Mr. Murray? Yes, Your Honor. I'm sorry to interrupt you there. Can I ask you a question on that point? Yes, Your Honor. In your reply brief, you have a footnote that I'm very thankful that you included, and that's several provisions of the First Amended Complaint that you believe supply a basis for a breach of contract allegation. If you had to pick one or two of those provisions, which one do you think best does it? Because I have the First Amended Complaint in front of me, I've reviewed it, and one of the things that strikes me about it is this pleading is not at all how you ordinarily see a breach of contract claim pled. Oftentimes the underlying agreement is identified, and then in many, many cases, a specific provision of an agreement is alleged to have been breached. The First Amended Complaint doesn't read like that. That's not the way the allegations are set out. So which paragraph in your view, or two paragraphs in your view, best set forth allegations that you think would survive dismissal on that breach of contract claim? Yes, Your Honor. Thank you, Your Honor. Before I answer the court's question, I would like to note that I'd like to reserve some time for rebuttal, but I'll turn it to your question, Your Honor. I believe, for example, the paragraph 38, alleging that Brown had made refusals to make funds available to cover Dr. Allen's living expenses, and I believe also in particular the allegation that Brown had failed to provide information to Dr. Allen. Right, and then we have to draw an inference, don't we, that the underlying investment advisory agreement imposed an obligation to do those things? Yes, Your Honor. And that's where I think, that's where you had some, or Dr. Allen had some trouble with the district court on this. Yes, Your Honor. I think, yes, but in terms of drawing inferences at the motion to dismiss stage, I don't think the court can necessarily, or the district court cannot draw those inferences in favor of the non-movements. So to the extent there's an issue here, and that I think is ultimately where the district court went too far, is it drew the presumption against Dr. Allen and presumed that everything that Dr. Allen challenged had occurred at the direction of Ms. Key. That certainly is a defense that we would expect the Brown defendants to raise, but it does present back questions. Could you give us a specific example of an action that you allege Brown took on his own without direction or involvement of Key? Yes, Your Honor. Well, I think there are questions about almost everything Brown did, whether or not those occurred at the direction of Key. For example, when Brown credited certain accounts, Dr. Allen's wife's accounts with certain funds, did that occur at the direction of Ms. Key, or why did that happen? And the overarching question is, what happened to the funds that were in these accounts? There were over $2 million in the IRA accounts in 2014, I believe, and by 2019, 75% of that had disappeared. Dr. Allen doesn't know what happened to it. Is the settlement with Ms. Key under seal? It is a confidential settlement, Your Honor, yes. But in turning to the second decision, I'm sorry, Your Honor, did you have a follow-up question? I have like a thousand, but you go ahead. Turning to the second decision that's under review here, and that is the denial of the motion for leave to file the second amended complaint. The district court, as you know, found that it was untimely because the case management plan had set a deadline for filing motions for leave to amend, but that deadline occurred while the motions to dismiss remained pending. We respectfully submit that under these circumstances, awaiting for a decision from the district court would constitute cause for having delayed after that deadline, particularly where the non-movement on the motion to dismiss is otherwise actively engaged in the case. This is not a case where the non-movement on the motion to dismiss was inactive, had not been engaged in the case, and in fact, Dr. Allen was engaged in discovery throughout the time period. In addition, Dr. Allen continued to believe that the motion to dismiss lacked merit. So preemptively filing a request to file an amended complaint while you're continuing to stand on your opposition to the motion to dismiss would be inconsistent with that. In addition, the amount of time between Dr. Allen's filing the request to file a second amended complaint was about 40 days after the deadline and within about 30 days after the court issued its decision on the motion to dismiss. That's a relatively short amount of time. It's consistent with the amount of time that often parties have to file an answer or a responsive pleading or a responsive brief. It's not an unusually long amount of time. So we would respectfully submit that, in fact, that is an abuse of discretion in these circumstances to find that Dr. Allen did not have cause. In addition, the court found that under Rule 15, there would not be any interest of justice to allow Dr. Allen to amend. In particular, the district court noted that allowing an amendment would resurrect discovery battles, would require a motion to stay, pending resolution of the issues in the Maryland case, and result in issues concerning proper venue. But all of those things would have occurred regardless of whether Dr. Allen had filed his motion to amend before or after the deadline set in the case management plan. So we would respectfully submit the same issues, Your Honor, would have arisen. The discovery battles would have continued. There still would have been an issue about a motion to stay, and there still would have been issues about proper venue. So those issues did not arise because Dr. Allen filed his motion to amend after the deadline in the case management plan. With that, Your Honor, I would like to reserve the rest of my time for rebuttal, unless the  Thank you. That's fine. Thank you. Mr. Hamilton. Good morning, Your Honor. My name is David Hamilton, and I represent the appellees in this matter. The centerpiece of the appellant's argument appears to be that the client decision by the Court of Appeals is a lifeline that rescues its pleading deficiencies and its procedural misfires. It isn't, it doesn't, and here's why. In Plank, the Court of Appeals in Maryland in July 2020 recognized for the first time an independent cause of action for a breach of fiduciary duty. The court retained and reaffirmed the substance of the law established by the Kahn decision about what constitutes and what must be pleaded through for a breach of fiduciary duty. In Kahn, which was retained in Plank, the court concluded that there is no universal law for a redress of breach of fiduciary duty. Kahn provided that a claimant must plead through the existence of fiduciary duty. The omission of the discussion in the argument before me about duty is what's important here. As interpreted, a claimant must plead through the particular fiduciary relationship involved that a duty exists, how it arises, the parameters of that duty, a breach, and how the breach occurs. The judge's question, both the first amended complaint and the second amended complaint failed this test. Both pled two types of fiduciary claims. The first claims arose out of the investment advisory contract and the IRA trust agreement the appellate entered into with Brown advisory. The breach's claim are that both in count one and count two that Brown advisory followed the direction of Elizabeth T, Joseph Allen's daughter, who was acting pursuant to an indisputably valid power of attorney for the management of Joseph Allen's financial affairs. Judge Miller found Brown advisory was contractually obligated to follow the directions of the whole of the power of attorney and not to second guess her directions. Mr. Hamilton, I'm sorry to interrupt you. Can I, let me ask you a question and I want you to tell me how, how I go wrong here, why this situation is different. Suppose, suppose our court here at the seventh circuit issued an opinion on article three standing at a time when the U.S. Supreme Court had decided Spokio, a case you probably know that's received a ton of attention, et cetera, et cetera. And Spokio was alleged and by a lot of accounts to have really changed the landscape. And our opinion never said a word about Spokio. Would we, would we commit legal error in your view? Sounds a bit like the court's decision in the MAO decision. So the court of appeals, I suppose you're asking me about the procedural and the substantive. Yeah, all I'm, all I'm trying to get at is this. When, when you go down the road as you were, and I understand why, about Plank was really not that game changing and the allegations are deficient in the first amendment complaint. I totally understand why you're making that argument. The concern that, that I have is how, how can we defend or how, how is there a defense of the district court's decision to say not a word about Plank? Whether, you may be right, maybe you're right, but we have a district court decision here on a motion to dismiss on a claim that all agree should be resolved under Maryland law. Maryland's highest court speaks to the issue and the district court opinion that was issued after the Plank decision says not a word about Plank. That, that's the, that's what would help me for, to hear you address. Certainly, thank you for the question, Your Honor. There are really two answers to that question. First is that in the court's first opinion, Judge Miller alluded to relied on the condescension. And so Judge Miller was relying on the correct law relative to what constitutes a breach of fiduciary duty and how it has to be pled and proved. The second point is that certainly the appellants, the plaintiffs below had an opportunity to say to the court, Judge Miller, we think you got it wrong. Here's what Plank did. Here's how it changes our case. And here's why we should be allowed to amend. Or in the first instance, why you should reconsider. And the plaintiff never gave Judge Miller that reasoning or the opportunity to consider that point. And, you know, I think that's why Judge Miller took the argument that this is a motion to reconsider and said, no, it's not. You didn't really meet the test for a motion to reconsider. You didn't tell me why there was a mistake or why there was a manifest error, an error of law. Had you done this in a motion to reconsider, I might have been able to consider this under Rule 59 or 60. And then secondly, Judge Miller said in the second part of his opinion denying motion to amend, you should have amended, Mr. Plaintiff, you should have amended your complaint a long time ago. It's not merely that you had, you filed your motion for leave to amend the second and add a second amendment complaint six weeks after the amended case management plan. But you, Mr. Plaintiff, had in your hands for over a year materials that would have allowed you to make amendments or propose amendments to the first amendment complaint. And so I think there's two things here. One is the court did the right thing in the first instance, but also procedurally, the plaintiff missed the appropriate opportunity to tell the court why, to give the court a reason about why the court should have done something with Plank. At the end of the day, we would be at the same place because, as I said at the beginning, the Plank case didn't change the law on fiduciary duty. And so I think the outcome would be under the Conn case, as reaffirmed by the Plank case, the plaintiff failed in putting in front of the court a proper claim for breach of fiduciary duty. If you had to identify the most significant prejudice that Brown might suffer if the complaint had been amended, what would that be? Can I take more than one, Your Honor? Because I think there are so many that it's difficult just to prioritize, but I will mention one. In the proposed second amended complaint, the plaintiff alleges that changes were made to a 2002 descendants trust degree, a document that was prepared by McBurman Will, former Dr. Allen at the time, he was a client, which contained a trustee unknown to Brown Advisory at the time, and all this occurred well before the 2006 customer-client relationship between Dr. Allen and Brown Advisory. The proposed second amended complaint alleges that Brown Advisory, along with others, either made certain changes or failed to make certain changes that were important to Dr. Allen. That would require if the second amended complaint were to go forward, if those allegations were made against Brown Advisory, Brown Advisory would have to consider and likely would include new third party complaints. Ms. Key, her brother D.C. Allen, who's a beneficiary of one of the trusts, the trustee, the protector, and potentially McDermott Will as the preparer of the changes that give rise to the claim by the plaintiff in the proposed second amended complaint. That would be a complete overhaul of this case and require an amendment to the case management plan that would just be extraordinary. It would put us off schedule by at least a year, if not more. It would expand the claims, it would expand the parties, it would expand the discovery. There are others, Your Honor, but that, I think, is just one example of, and that's certainly found in Judge Miller's opinion, that, you know, there is prejudice to Brown Advisory from what's been proposed by the second amended complaint. In addition to the existing things that would have to be resurrected, the existing discovery battles, and even without this descendants trust argument, there would have to be changes to the discovery schedule and expert deadlines, and we'd be off schedule by at least a year. So, Mr. Hamilton, is that why you urge us to just evaluate the 12B6 dismissal straight up under the first amended complaint and to consider the arguments you make about Plank? We cited the Adams case in our brief, and I think procedurally it matches up pretty well to our case, 733 and 734. The difference in the Adams case is that the district court there denied the second amendment, proposed the second amended complaint because the proposal was futile. Judge Miller didn't get that far. I think the court need not get that far, but if the court did go far enough to look at the futility of the second amended complaint, it would conclude that it, too, would fail the 12B6 test. No, but my question is a little bit different. Don't we have to review the 12B6 dismissal of the first amended complaint through the prism of what was decided in Plank? Yes, I agree with that. Okay, and that's something the district court, I mean, you might be right at the end of the day, but it's not the easiest question. I mean, Plank by its terms purports to change Maryland law. But it doesn't change the substance. What it does is change the procedure of Maryland law. It says that now there is an independent cause of action. That doesn't mean under Plank that every breach of fiduciary duty meets the 12B6 test. And wouldn't our court benefit, though, from that issue just being all hashed out in the district court? Because my sense is Mr. Murray's not agreeing with what you're saying right now. I would expect that he would not agree. But, you know, I don't know that that needs to be hashed out in the district court. Because if you read the Plank case carefully, what it does after it decides that there is an independent cause of action, it quotes the Conn case over and over and over for what equals a breach of fiduciary duty. And that was considered by Judge Miller in his first opinion, granting the motion to dismiss. And if the court were to shepherdize the cases after Plank on pleading issues, what the court would find is that the courts that look at this issue at the pleading stage say, well, Plank stands for this, quoting the Conn versus Conn decision. So Plank is certainly the lead case because it may be the most important, but it didn't change the law in what was set forth in the Conn case. And therefore, the outcome is going to be the same. If I could address one of the points that Council made about an allegation that seems to be an action taken by Brown Advisory. Again, this goes to the duty question. A good example can be found in paragraph 33 of the First Amendment complaint in which the appellant alleges that Brown Advisory was informed by Brown Advisory for failing to credit the proceeds of the sale of unspecified Texas properties to his account. But nowhere does the appellant allege that Brown Advisory had any role or duty with respect to properties maintained or owned by the appellant. In addition, the First Amendment complaint nowhere alleges that Brown Advisory received the proceeds from the sale. So these extra-factual duties don't exist. And that's why the claims in the First Amendment complaint that are outside the investment advisory agreement are deficient. They haven't met the test to allege that there's been a duty. Forgive me. Oh, forgive me. This time it's growing short. This is something that I was musing about. If we, let's say that we set aside the abuse of discretion and the late motion for, you know, just let's set it aside. Let's and really look at it. Suppose there had not been any durable powers of attorney. And Alan had called Brown Advisory himself and requested that Brown liquidate all of his assets and send a cashier's check to the very lovely Russian woman he had just met online. Whom he'd never met and to whom he was now engaged. Would Brown have any fiduciary duty to look beyond the face of his request? Believe it or not, those kinds of things happen, Your Honor. I know they do. I know they do. And so the true answer is that as a registered investment advisor, it has a fiduciary obligation. It also has a fiduciary obligation to follow the wishes of its clients. It's more than likely what Brown Advisory would do in order to satisfy SEC and other obligations and its own compliance plan is document that it thinks this is a terrible idea. And look at all the possibilities, get as many sign offs as possible to cover itself in connection with this request. But ultimately, at the end of the day, it would honor the request by the customer. You do understand why I asked you that question, don't you? Yes. OK. I see my time is up. Thank you, Your Honor. Thank you very much, Mr. Murray. Thank you, Your Honor. I think I think the last question the court asked points helps illustrate an important point about this. And that is the Brown defendants, although they have denied that a freestanding claim for breach of fiduciary duty existed under Maryland law, at least they did prior to the Plank decision. They have not denied that they have a fiduciary duty to Dr. Allen. And they do by nature of their relationship. But to to counsel's point that that that Plank did not change the law, I think to respond to that, we need to look no further than the district court's own decision in the district court's decision. The district court stated that there's no independent claim for breach of fiduciary duty. The Court of Appeals in Maryland said exactly the opposite. In the Plank decision, the court said we recognize an independent claim for fiduciary duty. Notably, the Brown defendants submitted Plank, recognizing that it was relevant to the issues and they submitted the decision to the district court. I would note, however, that the Plank I'm sorry, the Brown defendants did not, other than just submitting it to the court, did not take any. I have to stop you there. If you wanted the benefit of the Plank decision before the district court, it was incumbent on you to make that argument to the district court. Now that's entirely separate. That's a procedural barrier to your reliance on the case in this court. And we are under de novo review on the motion to dismiss so we can completely ignore what the district court did on the motion to dismiss and just decide the dismissal question ourselves because it's plenary review. And that brings Plank to us one way or another, as Judge Scudder has pointed out. And so let's just deal with the merits because you've got procedural barriers on your side too. So to the extent that you're putting up a procedural barrier on your opponent, let's just clear all that underbrush away and talk about the merits. Certainly understand the point, Your Honor. And I only mention that because there had been some suggestion that in some way Dr. Allen had essentially waived the right to have the Plank decision applied, which, but I won't go any further on that point, Your Honor. Understand your direction. Everybody's got a clean hands problem here. So let's just talk about the merits. With respect, the court had asked counsel what the biggest example of prejudice would be to the Brown defendants. Notably, the examples that counsel gave are not dependent or not caused by the fact that Dr. Allen filed his motion for leave to file the Second Amendment complaint 40 days after the deadline set in the case management. The alleged prejudice that would occur, it's not prejudice, it's simply a burden. Those are the burdens of being subject to an amended complaint, whether it's filed timely or untimely. So that would not, respectfully submit, that would not be prejudice. I see my time is up, Your Honor. Happy to answer any further questions. Thank you. All right. Thank you very much. And our thanks to both counsel. The case is taken under advisement.